# THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al*, ) ) ) )  Plaintiffs, ) ) v. ) ) UNITED STATES, ) ) Defendant, ) ) and ) ) ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and its individual members, ) ) ) ) Defendant-Intervenors. ) ) | Court No. 24-00228 |

**Order**

Upon consideration of the parties' comments and responses regarding redetermination, and upon all other papers and proceedings herein, the Court

**ORDERS** that the remand redetermination is sustained except that Commerce's determination regarding plaintiffs' separate application is remanded to Commerce for further reconsideration.

**SO ORDERED**

Dated:_____, 2026          _____
New York, New York                              Claire R. Kelly, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 24-00228 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and its individual members, | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

**Defendant's Response To Plaintiffs' Rule 56.2**
**Motion for Judgment upon The Agency Record**

<table>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. MCCARTHY<br>Director</td></tr>
<tr><td></td><td>TARA K. HOGAN<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:<br>SAMUEL CHILDERSON<br>Attorney<br>Office of the Chief Counsel<br>for Trade Enforcement & Compliance<br>U.S. Department of Commerce</td><td>TATE N. WALKER<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Tate.Walker@usdoj.gov</td></tr>
</table>

(202) 307-0163

May 11, 2026                                            *Attorneys for Defendant*

**Table of Contents**

Statement Pursuant to Rule 56.2 ............................................................................2

    I.      The Administrative Determination under Review .....................................2

    II.    The Issues Presented for Review ..............................................................2

    III.   Statement of Facts ....................................................................................2

        A. Initiation and Questionnaires .............................................................2

        B. Preliminary Results............................................................................5

        C. Final Results, Corrective Action, and Ministerial Error Allegations ..................6

Summary of The Argument....................................................................................7

Argument ..............................................................................................................8

    I.      Standard of Review..................................................................................8

    II.    Commerce's Valuation of Dingsheng's Self-Produced Recycled Scrap Input and Its By-Product Recycled Aluminum Is Supported by Substantial Evidence ............9

        A. Legal Background................................................................................9

        B. Commerce Appropriately Valued Dingsheng's Self-Produced Recycled Scrap and By-Product Recycled Aluminum ......................................................10

            1. Commerce's Practice in Valuation of By-Products...................................10

            2. The Record Evidence Contradicts Dingsheng's Arguments.......................13

        C. Dingsheng Did Not Exhaust Its Administrative Remedies Having Failed to Raise Its Arguments before This Court to Commerce .......................................18

    III.   The Court Should Grant Our Request for Voluntary Remand To Address the Appropriate Duty Rate for Certain Plaintiffs...........................................21

Conclusion ...........................................................................................................22

# Table of Authorities

**Cases**                                                                                                            **Page(s)**

*AIMCOR v. United States*,
  141 F.3d 1098 (Fed. Cir. 1998)....................................................................................... 18, 20

*AL Tech Specialty Steel Corp. v. United States,*
  366 F. Supp. 2d 1236 (Ct. Int'l Trade 2005) ............................................................. 19

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984)......................................................................................... 8

*Ceramica Regiomontana, S.A. v. United States*,
  810 F.2d 1137 (Fed. Cir. 1987)......................................................................................... 9

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938)............................................................................................................ 8

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966)............................................................................................................ 8

*Corus Staal BV v. United States*,
  30 C.I.T. 1040 (Ct. Int'l Trade 2006) ........................................................................ 20

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)......................................................................................................... 16

*Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*,
  607 F. Supp.3d 1301 (Ct. Int'l Trade 2022) ............................................................. 17

*Goldlink Indus. Co. v. United States*,
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) .............................................................. 8

*Home Meridian Int'l Inc. v. United States*,
  772 F.3d 1289 (Fed. Cir. 2014)..................................................................................... 10

*Hormel v. Helvering*,
  312 U.S. 552 (1941)......................................................................................................... 20

*Jiangsu Zhongji Lamination Materials Co. v. United States*,
  396 F. Supp. 3d 1334 (Ct. Int'l Trade 2019) ................................................. 7, 12, 19

*Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States*,
  Sl. Op. No. 23-84, Case No. 21-00138, 2023 WL 3863201 (Ct. Intl. Trade June 7, 2023)
  ....................................................................................................................... 11, 12, 13

*Jiaxing Brother Fastener Co. v. United States,*
    822 F.3d 1289 (Fed. Cir. 2016)...................................................................... 9, 10

*McKart v. United States,*
    395 U.S. 185 (1969).......................................................................................... 21

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006)........................................................................ 17

*Novosteel SA v. United States,*
    284 F.3d 1261 (Fed. Cir. 2002)........................................................................ 19

*Pastificio Lucio Garofalo, S.p.A. v. United States,*
    783 F. Supp. 2d 1230 (Ct. Int'l Trade 2011) .................................................. 16

*QVD Food Co. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011)........................................................................ 10

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998)..................................................................... 20, 21

*Shandong Huarong Gen. Corp. v. United States,*
    159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ...................................................... 8

*SKF USA Inc. v. United States,*
    254 F.3d 1022 (Fed. Cir. 2001)..................................................................... 21, 22

*Timken Co. v. United States,*
    26 C.I.T. 434, 201 F. Supp. 2d 1316 (2002) ................................................... 18

*Unemployment Comp. Comm'n v. Argon,*
    329 U.S. 143 (1946).......................................................................................... 20

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998).......................................................................... 9

*Zhejiang DunAn Hetian Metal Co. v. United States,*
    652 F.3d 1333 (Fed. Cir. 2011)........................................................................ 10

*Zhejiang Mach. Import & Export Corp. v. United States,*
    471 F. Supp. 3d 1313 (Ct. Intl. Trade 2020).................................................... 18

**Statutes**

19 U.S.C. § 1516a(b) ................................................................................................. 8

iii

19 U.S.C. § 1673 ......................................................................................................... 9

19 U.S.C. § 1677b ........................................................................................................ 9

19 U.S.C. § 1677b(c)(1)(B) ......................................................................................... 9

28 U.S.C. § 2637(d) ................................................................................................... 19

**Rules**

Ct. Int'l Trade R. 56.2 ................................................................................................. 1

**Adiministrative Dterminations**

*Certain Aluminum Foil from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order,*
83 Fed. Reg. 17,362 (Dept of Commerce Apr. 19, 2018) .......................................... 3

*Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Rescission of Review, In Part; 2022-2023,*
89 Fed. Reg. 88,972 (Dep't of Commerce Nov. 12, 2024) ..................................... 2, 6

*Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2022–2023,*
89 Fed. Reg. 35,801 (Dep't of Commerce May 2, 2024) .......................................... 5

*Common Alloy Aluminum Sheet from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020-2021,*
87 Fed. Reg. 54,975 (Dep't of Commerce Sept. 8, 2022) ....................................... 15

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
88 Fed. Reg. 38,021 (Dep't June 12, 2023) .............................................................. 3

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
88 Fed. Reg. 51,271 (Dep't of Commerce Aug. 3, 2023) ......................................... 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 24-00228 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and its individual members, | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

**Defendant's Response To Plaintiffs' Rule 56.2**
**Motion for Judgment upon The Agency Record**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co., Ltd.; Inner Mongolia Xinxing New Energy Material Co., Ltd. (Inner Mongolia Xinxing New Material Co.);

Dingheng New Materials Co., Ltd.; and Prosvic Sales Inc. (collectively, plaintiffs or Dingsheng).

ECF No. 41 (Oct. 8, 2025).

Dingsheng challenges certain aspects of the final results of the Department of

Commerce's administrative review of the antidumping duty order covering certain aluminum foil

from the People's Republic of China (China). We respectfully request a voluntary remand to

further evaluate the issue of Dingsheng's separate rate application. Because Commerce's

determination is otherwise in accordance with law, we respectfully request that the Court sustain

all other aspects of the final results.

<strong>Statement Pursuant to Rule 56.2</strong>

## I.    The Administrative Determination under Review

Dingsheng challenges *Certain Aluminum Foil from the People's Republic of China:*

*Final Results of Antidumping Duty Administrative Review, Final Determination of No*

*Shipments, and Rescission of Review, In Part; 2022-2023*, 89 Fed. Reg. 88,972 (Dep't of

Commerce Nov. 12, 2024) (P.R. 413), and accompanying Issues and Decision Memorandum

(Nov. 6, 2024) (IDM) (P.R. 404). The period of review is April 1, 2022 through March 31,

2023.

## II.    The Issues Presented for Review

1.    Whether Commerce's valuation of Dingsheng's self-produced recycled scrap

input and its by-product recycled aluminum is supported by substantial evidence.

2.    Whether the Court should grant Commerce's request for voluntary remand to

reconsider its separate rate determination.

## III.    Statement of Facts

### A.    Initiation and Questionnaires

2

Commerce initiated an administrative review of the antidumping duty order[1] covering aluminum foil from China on June 12, 2023. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38,021 (Dep't June 12, 2023) (*Initiation Notice*) (P.R. 42); *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 51,271, 51,277 (Dep't of Commerce Aug. 3, 2023) (correcting the *Initiation Notice* to include Manakin Industries, LLC) (P.R. 100).

Commerce selected Dingsheng as one of the mandatory respondents. Respondent Selection (Aug. 2, 2023) (C.R. 31, P.R. 99) at 1. In a prior segment of this proceeding, Commerce determined that the following companies should be treated as a single, collapsed Dingsheng entity: Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co.; and Inner Mongolia Xinxing New Energy Material Co., Ltd. (collectively, Dingsheng). *Id.* (citation omitted).

On July 31, 2023, Dingsheng filed its separate rate application. Separate Rate Application (July 31, 2023) (Dingsheng SRA) (C.R. 14-28, P.R. 88-95). Dingsheng alleged that it was eligible for a separate rate having no *de jure* or *de facto* governmental control over its operations. *Id.* at C.R. 14 at 9, 15.

---

[1] *See Certain Aluminum Foil from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order,* 83 Fed. Reg. 17,362 (Dept of Commerce Apr. 19, 2018) (*Order*).

Dingsheng also submitted timely responses to Commerce's various questionnaires. Dingsheng identified in its Section A Response that its questionnaire responses covered ten entities: Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co.; Inner Mongolia Xinxing New Energy Material Co., Ltd.; Thai Ding Li New Materials Co., Ltd.; Dingheng New Materials Co., Ltd.; Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; and Prosvic Sales, Inc. *See* Dingsheng Section A Response (Sept. 11, 2023) (Section A Resp.) (C.R. 70-90, P.R. 126-31) at (C.R. 70 at 1-2).

As part of Dingsheng's Section D questionnaire response, Dingsheng reported that it produced "by-product recycled aluminum" (RECYCLEDAL) as a factor of production. *See* Dingsheng's Section D Questionnaire Response (Oct. 4, 2023) (Sect. D Resp.) (C.R. 104-137, P.R. 145-46 at Exhibit D-2A, pdf p. 79 (C.R. 104). Dingsheng also reported that its aluminum by-products were "secondary products . . . generated during the production process of subject and non-subject merchandise" and that the by-products "were either re-introduced into production or sold." Sect. D Resp. at 19. Dingsheng also identified "recycled aluminum" as a factor of production. Sect. D Resp. at 12. For the recycled aluminum, which is used up in production, Dingsheng reported that it relies on a combination of its self-produced recycled aluminum (SELFPRORYAL) and recycled aluminum purchased from third parties (PURRYAL). *See* Sect. D Resp. at 11-17; Sect. D. Resp. at D-2A.

Ahead of Commerce's issuance of preliminary results, parties submitted pre-preliminary comments and rebuttal comments. In its pre-preliminary rebuttal comments, Dingsheng argued

4

that Commerce should apply an identical surrogate value for its self-produced recycled scrap factors of production inputs and its by-product recycled aluminum. *See* Dingsheng's Pre-Preliminary Rebuttal Comments (April 22, 2024) at 20-22 (C.R. 438, P.R. 357). Specifically, Dingsheng argued Commerce should value both its self-produced recycled scrap and its by-product using Harmonized Tariff Schedule (HTS) 7601.10 (Aluminum, Not Alloyed, Unwrought) and 7601.20 (Aluminum Alloys, Unwrought) because it converts its by-product recycled aluminum into self-produced recycled aluminum that is consumed in the production process. *Id.* Thus, Dingsheng argues that both factors of production are of equivalent value. Dingsheng did not mention anything about sales of by-product recycled aluminum. *Id.*

### B.  Preliminary Results

On May 2, 2024, Commerce published its preliminary results. *See Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2022–2023,* 89 Fed. Reg. 35,801 (Dep't of Commerce May 2, 2024) (P.R. 372) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum, April 26, 2024 (PDM) (P.R. 367). Commerce preliminarily valued Dingsheng's self-produced recycled aluminum by averaging the average unit values in HTS 7601.10 and 7601.20. *See* Surrogate Value Memorandum for Preliminary Determination (April 26, 2024) (P.R. 360) at Attachment 1, SELFPRORYAL, (P.R. 361, C.R. 440) (Preliminary SV Memo). Commerce valued Dingsheng's by-product recycled aluminum scrap based on HTS 7602.00 (aluminum waste and scrap). *See* Preliminary SV Memo at Attachment 1 at RECYCLEDAL (P.R. 361).

In the preliminary results, Commerce also identified the Dingsheng collapsed entity with six entities out of the ten originally reported by Dingsheng in its Section A Response:

5

Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co.; Inner Mongolia Xinxing New Energy Material Co., Ltd. *See Preliminary Results* at 89 Fed. Reg. at 35,802-03, unchanged in *Final Results*.

### C.    Final Results, Corrective Action, and Ministerial Error Allegations

In its administrative case brief, Dingsheng continued to argue that Commerce should apply HTS 7601.10 and HTS 7610.20 to value both the aluminum by-product (REYCLEDAL) and self-produced aluminum scrap (SELFPRORYAL).  Dingsheng's Case Brief (June 7, 2024) (Dingsheng's Case Brief) (C.R. 453, P.R. 386) at 48-51.

On November 12, 2024, Commerce published its final results.  Commerce continued to select Romania as the primary surrogate country to value Dingsheng's inputs.  IDM at 5. Commerce did not make changes to its valuation of Dingsheng's by-product recycled aluminum and self-produced recycled aluminum.  *Id.* at 9.  Commerce explained that its practice in proceedings involving flat-rolled aluminum products is to value scrap purchased to replace aluminum ingots, or reintroduced into production to replace ingots, using the HTS subheading 7601.20 (the provision for alloyed ingots), while assigning scrap that is sold as scrap using the HTS subheading 7602.  *Id.* at 9.  Commerce reached this conclusion relying on the lack of record evidence, even after considering the declaration and third-party information submitted by Dingsheng, that Dingsheng's own scrap that was sold was the same value as its own self-produced recycled aluminum expended in production.  *Id.* at 9; *see* Commerce Final Surrogacy Value Memorandum (Final SV Memo) (Nov. 5, 2024) (P.R. 405-06) at Attachment 1 (P.R. 406).

6

On November 11, 2024, Dingsheng filed a ministerial error allegation requesting Commerce modify its final results and assign a separate rate to all ten of the companies comprising the Dingsheng entity identified above. *See* above at p. 4. Clerical Error Comments (Nov. 11, 2024) (P.R. 412). Commerce denied the allegation. Commerce Memorandum regarding Ministerial Error Allegation (Jan. 7, 2025) (P.R. 418) at 2-3.

Before this Court, Defendant corrected cash deposit instructions issued as a result of the final results where a typographical error incorrectly assigned Dingsheng the rate of another respondent. *See* Notice of Corrective Action, ECF No. 26 (July 3, 2025); Status Report on Corrective Action, ECF No. 27 (July 10, 2025).

### Summary of The Argument

Commerce's valuation of Dingsheng's self-produced recycled scrap input and its by-product recycled aluminum is supported by substantial evidence. Commerce valued Dingsheng's self-produced recycled aluminum by averaging the average unit values reported in HTS 7601.10 (Aluminum, Not Alloyed, Unwrought) and 7601.20 (Aluminum Alloys, Unwrought) and valued Dingsheng's by-product recycled aluminum based on HTS 7602.00 (aluminum waste and scrap). The record supports valuing self-produced recycled scrap input and by-product recycled aluminum differently. The Court has previously sustained Commerce's analysis of the appropriate use of these HTS headings for self-produced recycled scrap and by-product recycled aluminum in prior litigation involving this same order. *See Jiangsu Zhongji Lamination Materials Co. v. United States*, 396 F. Supp. 3d 1334 (Ct. Int'l Trade 2019). The Court should tread no different path here as this record supports the conclusion that not all of the by-product recycled aluminum was expended in production like Dingsheng's self-produced recycled aluminum.

We also respectfully request that the Court remand, for further consideration, whether Commerce should have granted the separate rate application for four of the ten entities identified initially by Dingsheng in its separate rate application.

## Argument

### I.     Standard of Review

The Court will uphold Commerce's antidumping duty determination if it is supported by "substantial evidence on the record" and is otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotation altered).

While the Court may draw two inconsistent conclusions from the record, that "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted). Thus, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001); *see also Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." (citation modified). Commerce need not

8

provide an explicit explanation when its path is reasonably discernible. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987) ("A court may 'uphold {an agency's} decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (citation omitted)).

**II.     Commerce's Valuation of Dingsheng's Self-Produced Recycled Scrap Input and Its By-Product Recycled Aluminum Is Supported by Substantial Evidence**

### A.     Legal Background

The antidumping duty represents the amount by which the "normal value" of subject merchandise exceeds its "export price." 19 U.S.C. § 1673. If the proceeding involves a nonmarket economy country, such as China, and Commerce determines that available information does not permit a standard normal value calculation, then Commerce determines normal value upon the basis of surrogate values for "the factors of production utilized in producing the merchandise," plus "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. § 1677b(c)(1)(B).

Commerce values the factors of production, "to the extent possible," in one or more surrogate countries that are (A) "at a level of economic development comparable to that of the nonmarket economy country," and (B) "significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4)(A)-(B). Commerce generally selects one country with adequate data as the primary surrogate country. *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1294 (Fed. Cir. 2016); *see also* 19 U.S.C. § 1677b.

Commerce weighs the available information to make a product-specific and case-specific decision as to what constitutes the "best" available surrogate data.  Although the statute requires Commerce to value factors of production using the "best available information," Commerce "has discretion to determine what constitutes the best available information, as this term is not defined by statute."  *Jiaxing*, 822 F.3d at 1293 (citing *QVD Food Co. v. United States*, 658 F.3d 1318, 1323 (Fed. Cir. 2011)).  There is no requirement that the data be perfect.  *Id.* at 1301 (citing *Home Meridian Int'l Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014)).  Thus, when considering Commerce's surrogate value determination, "{t}he question here is not whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information."  *Id.* at 1300-01 (citing *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011)) ("Commerce is granted broad discretion to determine whether information is the best available because the statute does not define the term.")

### B.    Commerce Appropriately Valued Dingsheng's Self-Produced Recycled Scrap and By-Product Recycled Aluminum

Dingsheng contends that "Commerce's decision to value RECYCLEDAL (by-product recycled aluminum) using subheading 7602.00 data should be reversed."  Pl. Br. at 16.  Dingsheng argues reversal is required because "RECYCLEDAL is identical to, and fungible with, self-produced recycled aluminum (SELFPRORYAL)," and thus both scrap categories should be valued in the same way.  *Id.*  However, Commerce's choice to value the two categories of aluminum scrap differently, according to the end use, is reasonable and supported by substantial evidence, and it therefore should be affirmed.

### 1.    Commerce's Practice in Valuation of By-Products

Commerce's practice in proceedings involving flat-rolled aluminum products is to value scrap purchased to replace aluminum ingots otherwise expended in production using the HTS subheading 7601.20 (the provision for alloyed ingots), while assigning scrap that is sold using the HTS subheading 7602). IDM at 9; *see also Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States*, Sl. Op. No. 23-84, Case No. 21-00138, 2023 WL 3863201, at *2 (Ct. Intl. Trade June 7, 2023) (Commerce concluded and the Court affirmed that *"the four digit-level HTS 7602 correctly covers scrap, cuttings, and other {aluminum} byproducts, but not ash."*).

For by-product aluminum, *i.e.*, scrap that was sold to other parties, Commerce determined the value using Romanian imports classified under HTS heading 7602.00 ("Aluminum Waste and Scrap") during the period of review. *See* Preliminary SV Memo at Attachment 1; Final SV Memo at Attachment 1. By-product aluminum scrap that was sold to unaffiliated parties is reasonably valued using information for merchandise classified under HTS heading 7602 because the classification is the most accurate reflection of value that a producer will receive on an open market when selling aluminum scrap. *See* IDM at 9. Commerce noted that "nothing on the record establish{ed} that scrap sold from Dingsheng's warehouse should be assigned the value of aluminum ingots." *Id.* This valuation is important because the point of Commerce's analyses is valuing certain factors of production and then assigning a surrogate value for each input. *See* Preliminary SV Memo at Attachment 1; Final SV Memo at Attachment 1.

Additionally, Commerce correctly valued Dingsheng's self-produced recycled scrap. For self-produced recycled aluminum, Commerce used the average value for Romanian imports classified under HTS headings 7601.10 and 7601.20 during the period of review. *See* Preliminary SV Memo at Attachment 1 (SELFPRORYAL); Final SV Memo at Attachment 1.

11

Aluminum scrap that is reintroduced into the production process replaces an aluminum producer's consumption of alloyed and unalloyed aluminum ingots or aluminum liquid that normally is consumed in production and thus is reasonably valued using the average value of merchandise classified under these HTS headings.  IDM at 9.

Commerce's use of these two contrasting valuation methodologies has been sustained by this Court.  *Zhongji*, 396 F. Supp. 3d at 1351-52.  In *Zhongji*, Commerce valued the aluminum scrap using the HTS subheading for aluminum waste and scrap rather than the subheading for unwrought aluminum because of the manner of disposal as one product was sold and the other was simply used in production in place of aluminum ingots.  *Id.*  The Court found that Commerce's selection of HTS subheading 7602 was supported by substantial evidence as it "best matched the classification under which Zhongji was selling the scrap, rather than a subheading that may have better accounted for the scrap's chemical composition."  *Id.* at 1351.  As Commerce did in this review, Commerce in *Zhongji* also "valued . . . Dingsheng's aluminum scrap using the {} subheading, 7602.00."  *Id.* at 1352.  This conclusion is in line with Commerce's practice not to simply rely on chemical composition of scrap, but instead consider the full record evidence regarding value including the available market.  *Id.* at 1352 (discussing the requirement that a plaintiff distinguish its sold scrap as different from the general South African market); *see Jiangsu*, 2023 WL 3863201, at *5 (*quoting* Final Results of the Antidumping Duty Administrative Review of Certain Aluminum Foil From the People's Republic of China, 2017-2019: Issues and Decision Memorandum (2017-2019 IDM) (Feb. 25, 2021) at 7 ("'metallurgic content is not the sole factor in determining the value of a by-product'").

12

Using the best available information on the record, Commerce reasonably valued Dingsheng's by-product and self-produced recycled scrap based on the manner in which it was used by that manufacturer.  IDM at 6.  Dingsheng's arguments do not undermine Commerce's evaluation of the record nor its established methodology.  Instead, Dingsheng argues that because it resells some of the aluminum by-products and expends the rest in its production line inputs, "there is no difference between Dingsheng's reintroduced and sold by-product recycled aluminum, and the manner of disposal (*i.e.,* by selling) . . . should not result in a different valuation of the two streams."  Pl. Br. at 17-18.  While Dingsheng identifies several pieces of record evidence, nothing in the record contradicts Commerce's conclusion that the record fails to support that scrap value is the same as ingot value.  IDM at 9.  *See Zhongji,* 2023 WL 3863201, at *6 ("Even if reasonable minds might differ, the substantial evidence standard is met.").  Each of piece of record evidence that Dingsheng points to represents mere disagreement with Commerce's findings.

## 2.    The Record Evidence Contradicts Dingsheng's Arguments

Dingsheng first points to a declaration by its own employee about the "grade" of aluminum by-product scrap and its systematic conversion to self-produced recycled aluminum that is used up in production.  Pl. Br. at 16-17; Dingsheng First SV Rebuttal Part II at Attachment 1 (Jan. 17, 2024) (C.R. 188, P.R. 260).  However, this declaration does not have any connection with establishing the market value the aluminum by-product.  Commerce's practice is not to simply rely on metallurgical content to value the scrap.  2017-2019 IDM at 7

Dingsheng also points to its Section D Questionnaire Response at Ex. D-10, attachment D-10.1-4 to Dingsheng's brief, as supporting the proposition that the value of aluminum by-product that is sold is the same as aluminum by-product that is used up in the manufacturing

13

process. Pl. Br. at 17. That exhibit only demonstrates the tonnage of aluminum scrap sold, not that it is equal to the value of ingots, as Commerce found. IDM at 6. The same flaw follows Dingsheng's argument regarding what the "aluminum industry information" shows as to the value of aluminum by-products for each aluminum fabricator's practices or simply general practices worldwide. Pl. Br. at 18-23. The information from various aluminum companies does not establish the market for the purpose of a surrogate value but instead deals with the "intrinsic value" of aluminum by-products. Pl. Br. at 19. Commerce's role under the statute is to identify the best available information to value factors of production, not to identify the "intrinsic value" of a factor of production. Pl. Br. at 19; *see* above at 12-13.

The same problem belies Dingsheng's next set of arguments regarding various "aluminum companies" that described its self-produced new aluminum scrap recycling practices. Pl. Br. at pp. 23-25. These companies' practices speak to internal business operations, but nothing about how the "scrap sold from Dingsheng's warehouse should be assigned the value of aluminum ingots." IDM at 9. There is no external commercial sales data or value reports for the aluminum by-products. This is despite Dingsheng admitting that its argument should be supported by "price." Pl. Br. at 23-25. However, while alleging that various reports about aluminum producers production practices show that "recycled aluminum by-products have a high commercial value and supports its valuation at the same price as the corresponding input, self-producer recycled aluminum," none of these company's statements actually show that the value of by-products in its argument is x dollars and the value of recycled aluminum scrap is also x dollars—much less establish anything about Dingsheng's own scrap value.

Thus, aside from its own bare representation that its scrap was equivalent in value to unwrought aluminum, Dingsheng did not place any evidence on the record, such as an external

14

commercial source, that would demonstrate that its scrap material was different from what is commonly available in the market and what would have been classified in Romania, the primary surrogate country, as "aluminum waste and scrap."

Dingsheng's next misplaced argument relies on Commerce's decision in *CAAS from China*. *See Common Alloy Aluminum Sheet from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 54,975 (Dep't of Commerce Sept. 8, 2022) (*CAAS from China*), and accompanying IDM; Pl. Br. at 26-27. However, *CAAS from China* supports the distinction and different valuation of self-produced recycled scrap and by-product recycled aluminum. In *CAAS from China*, Commerce stated: "the record demonstrates that run-around scrap[2] is a substitute for certain alloyed and unalloyed aluminum inputs. Accordingly, {Commerce determined} an average value of import data for HTS 7601.10 'Aluminum, Not Alloyed, Unwrought,' and HTS 7601.20 'Aluminum Alloys, Unwrought,' is appropriate to value . . . run-around scrap." *CAAS from China* IDM at 46. Additionally, Commerce valued waste scrap, by-product recycled aluminum, using the value of merchandise classified under HTS 7602.00. *CAAS from China* IDM at 46. Commerce stated, "for aluminum scrap by-product, a primary factor determining the by-product's value is if the scrap is reintroduced into the production process or *sold to outside parties*." *CAAS from China* IDM at 46 (emphasis added).

Because the product in *CAAS from China* was sold, as was some of the aluminum by-product here, Pl. Br. at 17, Commerce reasonably judged that record evidence supports two different treatments of the types of aluminum scrap at issue, and this reasonable decision should

---

[2] Run-around scrap is reintroduced into the production process—self-produced recycled scrap.

be affirmed by this Court.  S*ee Pastificio Lucio Garofalo, S.p.A. v. United States*, 783 F. Supp.

2d 1230, 1233 (Ct. Int'l Trade 2011) ("Though reasonable minds may differ, if a reasonable

mind could accept the connection presented between the facts found and the conclusion reached,

an alternative judgment may not be substituted for that of the agency." (*citing FCC v. Fox*

*Television Stations, Inc.*, 556 U.S. 502, 514 (2009)).

Additionally, the fact that some scrap is saved for reintroduction into the production

process while other scrap is sold undermines Dingsheng's claim that these two scrap categories

at issue are identical.[3]  Pl. Br. at 17.  It further supports the conclusion that Commerce's

adjudication rests on substantial evidence.  Commerce's rejection of Dingsheng's fungibility

argument of aluminum by-products with self-produced aluminum scrap is seemingly supported

by its own admission that aluminum by-products require particular "cast rolling facilities" that

not even all of its affiliates possess in order to reintroduce aluminum by-products into

production.  Dingsheng's Case. Br. at 31.  This admission clarifies that an additional value-added

process is necessary to place aluminum by-products into production as if they were ingots or

other self-produced recycled aluminum, supporting Commerce's determination here and in line

with its past precedent.  2017-2019 IDM at 7 (explaining that value-added processes applied to

by-products make them "more comparable to scrap than to ingot inputs.").

Dingsheng broadly alleges that its various exhibits regarding Dingsheng's aluminum

recycling practices contained in DQR at Ex. D-10 and Dingsheng First SV Rebuttal Part II (Jan.

17, 2024) at Attachment 1 (C.R. 188, P.R. 260) establishes that sold or reintroduced aluminum

---

[3]  Dingsheng fails to explain why it maintains two different factors of production data for two categories it claims now are identical.  As self-produced recycled aluminum is always integrated into the production line as an input and one category, aluminum by-product, is either sold or integrated, indicates a distinction between the two factors of production and thus the difference in reporting.  *See* Pl. Br. at 17.

by-products were identical "chemical composition and physical characteristics." Pl. Br. at 28. However, this level of detailed information does not appear to be present within those two exhibits. D-10 simply provides an overview of the various Dingsheng's sister companies selling practices, some selling aluminum by-products entirely, DQR at Ex. D-10 at pp. 3-4, and some selling comparatively lesser amount of aluminum by-products compared to the amounts the companies reintroduce into production processes. DQR at Ex. D-10 at p. 1.; Pl. Br. at 31. Dingsheng's explanation that some of its affiliates completely sell aluminum by-products instead of reintroducing it into production, due to a lack of "cast rolling facilities," is not supported by anything but attorney argument, absent support in the record, as the cited exhibits simply lay out financial reporting data and not explanation. Pl. Br. at 31; *see also* DQR at Ex. D-10.

As far as the declaration contained in Dingsheng's rebuttal comments are concerned, none of the quoted portions within Dingsheng's brief before this Court nor its administrative brief mention anything about reselling or the quality of any aluminum by-products that were sold versus those that were retrained to be reintroduced into the production line. SV Rebuttal Part II (Jan. 17, 2024) at Attachment 1. Nor does the declaration describe why some of Dingsheng's affiliates sold aluminum by-products exclusively while some mostly used them again on the production line. *See generally* DQR at Ex. D-10; SV Rebuttal Part II (Jan. 17, 2024) at Attachment 1. Overall, this internal declaration from Dingsheng's own employee about its own practices is of limited probative value to Commerce's analysis.

Based upon the record as a whole, Commerce's determination is reasonable and must be affirmed even if there exists some evidence that detracts from the agency's conclusion. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006)(citations omitted); *see also Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*, 607 F. Supp.3d 1301, 1328

17

(Ct. Int'l Trade 2022) (the Court deferred to Commerce regarding the "assessment of the importance of wood scrap to the valuation process.").

**C.     Dingsheng Did Not Exhaust Its Administrative Remedies Having Failed to Raise Its Arguments before This Court to Commerce.**

Additionally, Dingsheng did not fully exhaust its administrative remedies, and the arguments cannot be raised now.  *AIMCOR v. United States*, 141 F.3d 1098, 1111 (Fed. Cir. 1998) ("A party is required to exhaust administrative remedies before seeking judicial action."). In its administrative case brief, Dingsheng devoted roughly three pages arguing its position whereas before the Court now, it devotes 16 pages to this argument.  Specifically, Dingsheng relies upon extensive aluminum industry information, Plaintiffs' Br. at 18-23, and evidence pertaining to other aluminum companies, Plaintiffs' Br. at 23-25 that was barely given more than a few sentences of briefing space before Commerce in its administrative case brief.  Dingsheng Case Br. at 49-50.  *See Zhejiang Mach. Import & Export Corp. v. United States*, 471 F. Supp. 3d 1313, 1338 (Ct. Intl. Trade 2020) (quoting *Timken Co. v. United States*, 26 C.I.T. 434, 460, 201 F. Supp. 2d 1316, 1340–41 (2002) ("Respondents do not meet exhaustion requirements 'by merely mentioning a broad issue without raising a particular argument{;} {however,} plaintiff's brief statement of the argument is sufficient if it alerts the agency to the argument with reasonable clarity and avails the agency with an opportunity to address it.'").

Dingsheng argues before this Court that "the record establishes that the remaining . . . RECYCLED AL that Dingsheng resold had identical chemical composition and physical characteristics as the . . . {quantity} directly reintroduced into production."  Pl. Br. at 17 (citing DQR Exhibit D-10); Dingsheng's First SV Rebuttal Part II Attachment 1).  Dingsheng's case brief never mentions that any of the aluminum by-products at issue were sold, much less hints

18

than any sold amounts were identical to the ones reintegrated into production.  Dingsheng Case Br. at 48-51.

Dingsheng's other arguments regarding Commerce's alleged past practices set forth in *Zhongji* and differentiation between sold aluminum by-product scrap and reintroduced scrap also suffers from the same malady.  396 F. Supp. 3d at 1351-52.[4]  There is no mention of this argument that any aluminum by-product reintroducing into production should be classified as 7601.20 within Dingsheng's case brief.  Dingsheng Case Br. at 48-51.  Dingsheng never provided Commerce with its own analysis of by-product recycled aluminum and the quantity sold as it now does before this Court.  Pl. Case. Br. at Attachment 1 (ECF p. 47).  Nor does Dingsheng present an argument about the necessity to average the values found in HTS 7601.10 and 7601.20 for any aluminum by-products that were reintroduced into the production.

Because these above arguments were not raised to Commerce, Commerce did not have the opportunity to discuss or address these arguments in its final results.  "{I}t is black letter law that—to properly preserve an issue for appeal—a party generally must first exhaust its remedies by making its argument before the agency, then brief that argument before the trial court. Arguments that are not properly preserved are waived."  *AL Tech Specialty Steel Corp. v. United States,* 366 F. Supp. 2d 1236, 1245 (Ct. Int'l Trade 2005) (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002)).  "In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  A "reviewing court usurps the agency's function when it sets

---

[4] *Zhongji* actually demonstrates that Commerce past practice is to value Dingsheng's aluminum by-product by HTS subheading 7602 and Dingsheng's recycled aluminum by-product under HTS 7601.20.  396 F. Supp. 3d. at 1352 ("Commerce valued Zhongji's aluminum scrap and Dingsheng's aluminum scrap using the same subheading, 7602.00."); Pl. Br. at 29-30.

aside an agency determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reason for its action." *Unemployment Comp. Comm'n v. Argon*, 329 U.S. 143, 155 (1946).

Accordingly, a plaintiff must exhaust administrative remedies. *See Sandvik Steel Co. v. United States*, 164 F.3d 596, 599-602 (Fed. Cir. 1998) (a party is not entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted). A party that fails to exhaust administrative remedies may not raise the issue *de novo* before the trial court. *AIMCOR*, 141 F.3d at 1111-12.

The exhaustion requirement is aimed at providing the agency with the opportunity to consider an argument and fully state its reasoning for adopting or rejecting that argument. *Aragon*, 329 U.S. at 155. That objective cannot be satisfied if a party, such as Dingsheng, is permitted to broadly invoke an argument before the agency and then expound at the argument in Court in ways not presented to the agency.

While there are exceptions to the requirement of administrative exhaustion, none of them apply. This Court has recognized the following limited exceptions to the exhaustion requirement: (1) plaintiff raises a pure question of law that does not require further agency involvement; (2) plaintiff did not have timely access to the confidential record; (3) an intervening judicial interpretation has changed the agency result; and (4) raising the argument at the administrative level would have been futile. *See Corus Staal BV v. United States*, 30 C.I.T. 1040, 1050 n.11 (Ct. Int'l Trade 2006). However, absent an exception to the doctrine of exhaustion of administrative remedies, a reviewing court should not consider an issue that a complainant failed to raise at the administrative level. *Hormel v. Helvering*, 312 U.S. 552, 557-58 (1941).

None of the exceptions apply here. There has been no intervening judicial decision. There is no basis to claim futility because had these arguments been included in its case brief, Commerce would have considered and responded to them as it did to the comments submitted. Finally, the issue is not a pure question of law but necessarily a fact intensive inquiry.

Additionally, Dingsheng also never provided its analysis as to the differences between aluminum by-products sold versus those expended in production to Commerce to allow the agency to apply its expertise and, if necessary, further develop the record. *McKart v. United States*, 395 U.S. 185, 194 (1969) ("{J}udicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise."); *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998); Pl. Case. Br. at Attachment 1 (ECF p. 47). Having failed to produce these percentages and analyses in the administrate review, Dingsheng should be excluded from raising these arguments now.

Dingsheng failed to exhaust administrative remedies with respect to arguments that it did not raise during the underlying proceeding regarding the identical nature of sold and reintroduced aluminum by-product. Accordingly, this Court should not consider these arguments because Commerce did not have the chance to address them in the administrative process.

III.    **The Court Should Grant Our Request for Voluntary Remand To Address the Appropriate Duty Rate for Certain Plaintiffs**

We respectfully request a voluntary remand to further evaluate whether Thai Ding Li New Materials Co., Ltd.; Dingheng New Materials Co., Ltd.; Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; and Prosvic Sales, Inc. are entitled to a separate rate.

Commerce "may request a remand, without confessing error, to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). While the

Court will deny a request that is "frivolous or in bad faith," if Commerce's concern is "substantial and legitimate, a remand is usually appropriate." *Id*. at 1029.

Commerce's request meets this standard. Commerce initiated a review of these entities and Dingsheng identified that its questionnaire responses covered ten entities—six of which were collapsed into the Dingsheng single entity and an additional four companies identified above. *See* Section A Resp. at (C.R. 70 at 1-2). Commerce inadvertently did not include the antidumping duty rate of the four companies. Commerce did not include these four entities in its preliminary results, and the issue was not raised in administrative case briefs. Because Commerce initiated a review of these four entities and did not assign an antidumping duty rate in its final results, we respectfully request that the Court remand this issue to allow Commerce to assess the appropriate duty rate.

## Conclusion

For these reasons, we respectfully request this Court to deny Dingsheng's motion for judgment on the agency record and grant the request for a voluntary remand to allow further evaluation of the separate rate determination.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. MCCARTHY<br>Director</td></tr>
<tr><td></td><td>TARA K. HOGAN<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:<br>SAMUEL CHILDERSON<br>Attorney<br>Office of the Chief Counsel<br>for Trade Enforcement & Compliance<br>U.S. Department of Commerce</td><td>/s Tate N. Walker<br>TATE N. WALKER<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division</td></tr>
</table>

Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
Tate.Walker@usdoj.gov
(202) 307-0163

May 11, 2026                                 *Attorneys for Defendant*

### Certificate of Compliance

I hereby certify that the foregoing brief complies with the Rules of this Court, Chamber

Procedures 2(B), and the Court's scheduling order in that it contains 6,115 words, including text,

footnotes, and headings, as computed using Microsoft Word.

/s/ Tate N. Walker

23