Slip Op. 26-137

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., ET AL.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ET AL.,**<br><br>**Defendant-Intervenors.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 24-00228**<br>**PUBLIC VERSION** |

**OPINION AND ORDER**

[ Remanding the United States Department of Commerce's final determination as to the surrogate value of Recycled By-Product Aluminum and application of separate rates in the less-than fair value investigation of Certain Aluminum Foil from the People's Republic of China. ]

Dated: November 10, 2026

Ned H. Marshak, Dharmendra N. Choudhary, and Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, and Washington, D.C., for Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co., Ltd.; Inner Mongolia Xinxing New Energy

Material Co., Ltd. (Inner Mongolia Xinxing New Material Co.); Dingsheng New Materials Co., Ltd.; and Prosvic Sales Inc.

Tate N. Walker, U.S. Department of Justice, Commercial Litigation Branch – Civil Division, of Washington, D.C., and Karl J. Mueller, Of Counsel, U.S. Department of Commerce, Officer of Chief Counsel for Trade Enforcement and Compliance, of Washington, D.C., for Defendant United States. On the brief were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel were Samuel E. Childerson and Layla R. Mustafa, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement & Compliance, of Washington, D.C.

John M. Herrmann, II, Joshua R. Morey, Matthew G. Pereira, and Paul C. Rosenthal, Kelley Drye & Warren, LLP, of New York, and Washington, D.C., for Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its Individual Members, JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products LLC.

Kelly, Judge: Before the Court is Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co., Ltd.; Inner Mongolia Xinxing New Energy Material Co., Ltd. (Inner Mongolia Xinxing New Material Co.); Dingsheng New Materials Co., Ltd.; and Prosvic Sales Inc.'s (collectively, "Dingsheng" or "Plaintiffs") motion for judgment on the agency record, challenging the U.S. Department of Commerce's ("Commerce") final results in the fifth administrative review of the antidumping duty ("ADD") order on Aluminum Foil from the People's Republic of China ("China") for the 2022–2023 period of review

("POR"). See Pls.' Mot. for J. on the Agency R. Pursuant to R. 56.2, Oct. 8, 2025, ECF Nos. 41–42 ("Pls. 56.2 Mot."); Certain Aluminum Foil From People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Rescission of Review, in Part; 2022–2023, 89 Fed. Reg. 88,972 (Dep't of Commerce Nov. 12, 2024), P.R. 413 ("Final Results"), and accompanying Issues & Decision Memorandum (DOC Nov. 5, 2024), P.R. 404 ("Final Decision Memo").

**BACKGROUND**

On June 12, 2023, Commerce initiated the fifth administrative review of the ADD order on Aluminum Foil from the People's Republic of China for the 2022–2023 POR. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 38,021, 38,026 (DOC June 12, 2023), P.R. 42. On July 31, 2023, Dingsheng submitted a separate rate application. See Separate Rate Application for Dingsheng in the Administrative Review of the Antidumping Duty Order on Aluminum Foil from the People's Republic of China, P.R. 88–96, C.R. 14–28 (July 31, 2023). On August 2, 2023, Commerce selected Dingsheng as a mandatory respondent. See Commerce Respondent Selection Memorandum at 6, P.R. 99, C.R. 31 (Aug. 2, 2023). Dingsheng timely responded to Commerce's various questionnaires and, in their Section A Response, identified that the questionnaire responses covered ten entities:

1. Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.)
2. Dingsheng New Materials Co., Ltd.
3. Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.)
4. Hangzhou Five Star Aluminium Co., Ltd.
5. Hangzhou Teemful Aluminium Co., Ltd.
6. Inner Mongolia Liansheng New Energy Material Co.
7. Inner Mongolia Xinxing New Energy Material Co., Ltd. (Inner Mongolia Xinxing New Material Co., Ltd.)
8. Thai Ding Li New Materials Co., Ltd.
9. Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.
10. Prosvic Sales, Inc.

See Dingsheng Section A Questionnaire Response at 1–2, P.R. 126–31, C.R. 70–90 (Sept. 11, 2023). On October 4, 2023, Dingsheng submitted their Section C and Section D Questionnaire Responses. See Dingsheng Section C Questionnaire Response, P.R. 147, C.R. 138–146 (Oct. 4, 2024); Dingsheng Section D Questionnaire Response, P.R. 145–146, C.R. 104–137 (Oct. 4, 2023) ("DQR").

On January 3, 2024, Dingsheng presented their First Surrogate Value Submission. See Dingsheng First Surrogate Value Submission, P.R. 167–184 (Jan. 3, 2024) ("Dingsheng First SV Submission"). On April 26, 2024, Commerce published its preliminary determination for surrogate value. See Surrogate Value Memorandum for Preliminary Determination in the Administrative Review of Certain Aluminum Foil from the People's Republic of China (Apr. 26, 2024), P.R. 360–361 ("Prelim. SV Determination"). Commerce determined the value of By-Product Recycled Aluminum ("RECYCLEDAL") using Romanian import data from Heading

7602.00, HTS ("Aluminum Waste and Scrap") during the POR. See Prelim. SV Determination at Att. 1. Commerce determined the value of By-Product Self-Produced Recycled Aluminum ("SELFPRORYAL") using an average of Romanian import data from Subheadings 7601.10 and 7601.20, HTS during the POR. See Prelim. SV Determination at Att. 1. On March 11, 2024, Dingsheng filed Supplemental Sections A, C, and D Questionnaire Responses. See Dingsheng Supplemental Sections A & C Questionnaire Response, P.R. 308–310, C.R. 316–327 (Mar. 11, 2024); Dingsheng Supplemental Section D Questionnaire Response, P.R. 305–306, C.R. 257–314, (Mar. 11, 2024). On March 27, 2024, Dingsheng submitted their Final Surrogate Value Submission. See Dingsheng's Final Surrogate Value Submission, P.R. 330–336 (Mar. 27, 2024).

On May 2, 2024, Commerce published the preliminary results. See Certain Aluminum Foil From People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments: 2022-2023, 89 Fed. Reg. 35,801, 35,803 (DOC May 2, 2024), P.R. 372 ("Preliminary Results"), and accompanying Issues and Decision Memorandum (DOC Apr. 26, 2024), P.R. 367 ("Preliminary Decision Memo"). Commerce determined that only six Dingsheng entities—Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited; Hangzhou Dingsheng Import & Export Co., Ltd.; Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New

Energy Material Co.; and Inner Mongolia Xinxing New Energy Material Co., Ltd.—were eligible for separate rates. See Preliminary Results at 35,803. On June 7, 2024, Dingsheng filed their administrative case brief. See Dingsheng Case Brief, P.R. 386–388, C.R. 453–456 (June 7, 2024) ("Dingsheng Case Br.").

On November 12, 2024, Commerce published the Final Results of its determination. See Final Results and Final Decision Memo. Commerce continued to find that RECYCLEDAL should be valued using data from Heading 7602, HTS. See Final Decision Memo at Cmt. 2.

On November 11, 2024, Dingsheng submitted comments seeking correction of an alleged ministerial error in the Final Results. See Dingsheng Clerical Error Cmts., P.R. 412 (Nov. 11, 2024). Dingsheng alleged that of the ten entities they identified in the Section A Response, Commerce erroneously omitted four entities from its separate rate analysis. See id. On January 7, 2025, Commerce responded to Dingsheng's comments, denied the allegation, and did not recommend amending the Final Results. See Ministerial Error Allegation Memo. at 2–3, P.R. 418 (Jan. 7, 2025).

On October 8, 2025, Plaintiffs filed their motion for judgment on the agency record. See generally Pls. 56.2 Mot. On May 11, 2026, Defendant and Defendant-Intervenors filed responses to Plaintiffs' Rule 56.2 Motion requesting the Court to value Plaintiffs' RECYCLEDAL using data from Heading 7602.00, HTS. See Def.'s Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R., May 11, 2026, ECF No. 53 at 7–8 ("Def. Resp."); Def.-Ints.' Resp. Br. in Opp'n to Pls.' Mot. for J. on the Agency R.,

May 11, 2026, ECF Nos. 54–55 at 2–3 ("Def-Int. Resp."). Defendant additionally requested the Court remand for further consideration whether Commerce should have granted separate rate applications for four entities Plaintiffs identified in their separate rate application. See Def. Resp. at 8. However, Defendant-Intervenors requested the Court sustain Commerce's final separate rate determination. See Def.-Int. Resp. at 2–3. On July 2, 2026, Plaintiffs filed their reply. See Pls.' Reply to Def.'s and Def.-Ints.' Resp., July 2, 2026, ECF Nos. 58–59 ("Pls. Reply"). On October 1, 2026, the Court heard oral arguments. See ECF No. 69, Oct. 1, 2026 ("Oral Argument").

## JURISDICTION AND STANDARD OF REVIEW

The Court exercises jurisdiction in accordance with 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grants the Court authority to review actions contesting the final determination in an administrative review of an ADD order. See 19 U.S.C. § 1516a(a)(2)(B)(iii); 28 U.S.C. § 1581(c). The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Crawfish Processors Alliance v. United States, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court reviews the agency record as a whole and may

not supply a reasoned basis for the agency's action that the agency itself has not given. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

## DISCUSSION

### I. Commerce's Data Selection to Value Recycled Aluminum By-Product

Plaintiffs challenge Commerce's decision to value Dingsheng's by-product factors of production ("FOP") differently based on record evidence of their respective end-uses. See Pls. 56.2 Mot. at 16–31; see also Final Results at Cmt. 2. Specifically, Plaintiffs argue Commerce's determination is unsupported by substantial evidence because RECYCLEDAL and SELFPRORYAL are "indistinguishable in physical and chemical characteristics." See Pls. 56.2 Mot. at 18. Plaintiffs further argue record evidence establishes that a portion of RECYCLEDAL was redesignated as SELFPRORYAL and "directly reintroduced into production" of aluminum foil and, therefore, should be valued as Commerce values SELFPRORYAL. See id. at 16–17 (internal citations omitted). Defendant argues that the record supports valuing RECYCLEDAL and SELFPRORYAL differently because each by-product has a distinct end-use, and Commerce has a practice of valuing by-products by their end-use which the Court has previously approved. See Def. Resp. at 7. Defendant also contends that Plaintiffs failed to exhaust their administrative remedies with respect to the percentage of aluminum by-product sold and are now precluded from arguing RECYCLEDAL should be valued based on the portions reintroduced and sold before the Court. See id. at 18–21. For the reasons that follow, Commerce's determination

regarding its valuation of RECYCLEDAL is remanded for further consideration or explanation.

Commerce imposes an ADD equal to the amount by which the normal value of the subject merchandise exceeds its export price or constructed export price. See 19 U.S.C. § 1673. In a proceeding involving merchandise exported from a non-market economy ("NME") country, Commerce determines normal value based on the value of the FOP used to produce the merchandise plus amounts for general expenses, profit, containers, coverings, and other expenses. See 19 U.S.C. § 1677b(c)(1), (3). Commerce must value those FOP, "to the extent possible," using prices or costs from market economy countries that are both "at a level of economic development comparable to that of the [NME] country" and "significant producers of comparable merchandise."[1] 19 U.S.C. § 1677b(c)(4). Commerce generally values all FOP using data from a single surrogate country, so long as the record contains adequate data from that country. See 19 C.F.R. § 351.408(c)(2); see, e.g., Jiaxing Brother Fastener Co. v. United States, 822 F.3d 1289, 1294 (Fed. Cir. 2016).

Although the statute directs Commerce to use the "best available information" to value FOP, the statute does not define that phrase. See generally 19 U.S.C.

---

1 When multiple countries have comparable economic development to the NME country and are significant producers of comparable merchandise, Commerce considers the reliability and completeness of the data from these comparable countries and generally selects the country with the best data to be the primary surrogate country. See Sao Ta Foods Joint Stock Company v. United States, 425 F. Supp. 3d 1314, 1321 (Ct. Int'l Trade 2020) (internal citations omitted).

§ 1677b. Commerce therefore has broad discretion to determine, on the record of each proceeding, which surrogate data constitutes the best available information. See QVD Food Co. v. United States, 658 F.3d 1318, 1323 (Fed. Cir. 2011); Jiaxing, 822 F.3d at 1293. The data need not be perfect. See Home Meridian Int'l, Inc. v. United States, 772 F.3d 1289, 1296 (Fed. Cir. 2014). In reviewing Commerce's surrogate value determination, the question is not whether the Court would have selected different or better information in the first instance, but whether a reasonable mind could conclude that Commerce selected the best available information. See Jiaxing, 822 F.3d at 1300–01 (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1341 (Fed. Cir. 2011)). Commerce generally selects surrogate values that "are publicly available, are product-specific, reflect a broad market average, and are contemporaneous with the period of review." Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014). In reaching its conclusion, Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts and the choice made.'" Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal citations omitted).

Commerce values flat-rolled aluminum products using data from Subheading 7601.20, HTS (aluminum, alloyed, unwrought) for scrap purchased to replace aluminum ingots, or reintroduced into production to replace aluminum ingots and Heading 7602, HTS (aluminum waste and scrap) for sold scrap:

> Commerce's practice in cases involving flat-rolled aluminum products is to value scrap purchased to replace aluminum ingots, or reintroduced into production to replace ingots using the Harmonized System (HS) subheading 7601.20 (the provision for alloyed ingots) while assigning scrap that is sold as scrap using the HS subheading 7602). This practice has been affirmed by the CIT. Because there is nothing on the record establishing that scrap sold from Dingsheng's warehouse should be assigned the value of aluminum ingots, we continue to use the HS subheading 7602 to value this by-product.

Final Decision Memo at Cmt. 2 (footnotes omitted); see also Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States, 396 F. Supp. 3d 1334, 1351 (Ct. Int'l Trade 2019).

Here, Commerce claims to be following its practice of valuing reintroduced scrap as ingots but fails to address record evidence demonstrating that Dingsheng reintroduced some portion of RECYCLEDAL into production. Dingsheng identified in their questionnaire response that they reintroduced and sold some portions of RECYCLEDAL. See DQR at Exhibit D-10 (showing that Plaintiffs reintroduced and sold some portions of RECYCLEDAL).[2] Dingsheng also states in their Case Brief that Commerce's past practice is to value reintroduced and scrap by-product aluminum using the average value of Subheading 7601.10, HTS (aluminum, not alloyed, unwrought) and Subheading 7601.20, HTS, and argue that RECYCLEDAL

[2] Plaintiffs explain that they both reintroduced REYCLEDAL into production and sold RECYCLEDAL during the POR April 2022 through March 2023. See DQR at Exhibit D-10. However, Plaintiffs concede they incorrectly asserted in their Case Brief that they reintroduced 100 percent of RECYCLEDAL into production. See Pls. Reply at 15.

should be valued using an average of Subheadings 7601.10 and 7601.20, HTS. See Dingsheng Case Br. at 50. Yet, Commerce asserts there is "nothing on the record" establishing Dingsheng's RECYCLEDAL should be valued using the average value of Subheadings 7601.10 and 7601.20, HTS. See Final Decision Memo at Cmt. 2. On remand, Commerce must engage with the relevant data demonstrating that Plaintiffs reintroduced a portion of RECYCLEDAL into the production of aluminum foil.

Defendant contends that Plaintiffs did not did not argue before Commerce that Plaintiffs reintroduced some portion of RECYCLEDAL into production and, therefore, failed to exhaust their administrative remedies:

> Dingsheng's other arguments regarding Commerce's alleged past practices set forth in Zhongji and differentiation between sold aluminum by-product scrap and reintroduced scrap also suffers from the same malady. 396 F. Supp. 3d at 1351-52. There is no mention of this argument that any aluminum by-product reintroducing into production should be classified as 7601.20 within Dingsheng's case brief. Dingsheng Case Br. at 48-51. Dingsheng never provided Commerce with its own analysis of by-product recycled aluminum and the quantity sold as it now does before this Court. Pl. Case. Br. at Attachment 1 (ECF p. 47). Nor does Dingsheng present an argument about the necessity to average the values found in HTS 7601.10 and 7601.20 for any aluminum by-products that were reintroduced into the production.

Def. Resp. at 19 (footnotes omitted). Generally, parties challenging an ADD order must exhaust their administrative remedies prior to bringing a civil action. See 28

U.S.C. § 2637(d).[3] A party exhausts its administrative remedies by alerting the relevant agency to the party's argument "with reasonable clarity and avails the agency with an opportunity to address it." Timken Co. v. United States, 201 F. Supp. 2d 1316, 1340–41 (Ct. Int'l Trade 2002). Although administrative remedies are not exhausted "by merely mentioning a broad issue without raising a particular argument," see id. at 1340, the "determinative question" regarding exhaustion is whether "Commerce was put on notice of the issue," and not whether the plaintiff used the "exact wording" in the subsequent litigation. See, e.g., Trust Chem Co. v. United States, 791 F. Supp. 2d 1257, 1268 n.27 (Ct. Int'l Trade 2011).

In the very pages cited by Defendant, see Def. Resp. at 19, Dingsheng argued that RECYCLEDAL is reintroduced into production and thus should be valued the same as SELFPRORYAL using the average of data from Subheadings 7601.10 and 7601.20, HTS.[4] See Dingsheng Case Br. at 50 ("As such, the undisputed record

---

[3] There are limited exceptions to the exhaustion doctrine not at issue here. See Corus Staal BV v. United States, Court No. 05–00354, 2006 WL 2056401, at *7 n.11 (Ct. Int'l Trade July 25, 2006).

[4] At oral argument, Defendant contended that this statement in Plaintiffs' Case Brief was ambiguous and could be reasonably interpreted to mean that RECYCLEDAL that was reintroduced would be renamed SELFPRORYAL. See Oral Argument at 45:05–45:52. Defendant further claimed that Commerce must look to Plaintiffs' Case Brief for their argument and should not need to look toward record evidence to discern Plaintiffs' position and identify arguments Plaintiffs should have made. See id. at 45:55–46:05. Nonetheless, Commerce must engage the record evidence to establish a rational connection between its decision and the information available. See State Farm, 463 U.S. at 43. Plaintiffs' statement in their Case Brief along with the record evidence D-10 put Commerce on notice regarding the issue.

evidence establishes that . . . RECYCLEDAL was simply redesignated as SELFPRORYAL and thereafter . . . directly reintroduced (without any further pretreatment) into the production of Al foil."). Although Dingsheng also argued RECYCLEDAL should be valued the same as SELFPRORYAL based on their identical chemical composition, in raising the issue of chemical composition they also note the reintroduction of RECYCLEDAL into the production of aluminum foil.[5] See id. at 48–51. Further, Dingsheng's documentation states that RECYCLEDAL is reintroduced into production, and Commerce does not appear to engage with this statement. See Dingsheng 1st Surrogate Value Rebuttal Part I, P.R. 246–259 (Jan. 17, 2024) ("Dingsheng First SV Rebuttal Part I");[6] Dingsheng 1st Surrogate Value Rebuttal Part II, P.R. 260, C.R. 188 (Jan. 17, 2024) ("Dingsheng First SV Rebuttal

---

[5] In its first surrogate value rebuttal submission, Plaintiffs maintained that the two inputs should be valued using data from identical HTS headings, arguing SELFPRORYAL and RECYCLEDAL are "synonymous." See Dingsheng First SV Rebuttal Part II, Exs. 1–2 (List of Attachments with Explanation). In its rebuttal to Petitioners' pre-preliminary comments, Plaintiffs also claimed that "record evidence established that "SELFPROPRYAL is identical to . . . RECYCLEDAL . . . {which} in turn, requires that both SELFPRORYAL and RECYCLEDAL should be valued using an identical surrogate value." Dingsheng Pre-Prelim. Rebuttal Cmts. at 20–21, P.R. 357, C.R. 438 (Apr. 22, 2024).

[6] In Part I of Dingsheng's First Surrogate Value Rebuttal, Dingsheng states that the exhibits demonstrate that "new Al scrap produced as a by-product in course of production of Al products is directly reintroduced (without any pretreatment) into production of Al products. Unlike old scrap, new scrap is typically not subjected to any pretreatment. As such, Self-produced Recycled Al is synonymous with By-product Recycled Al." Dingsheng First SV Rebuttal Part I.

Part II");[7] see also Final Decision Memo at Cmt. 2 ("Because there is nothing on the record establishing that scrap sold from Dingsheng's warehouse should be assigned the value of aluminum ingots, we continue to use the HS subheading 7602 to value this by-product."). In considering whether Plaintiffs have exhausted their arguments, the Court need not require Plaintiffs to have used the "exact wording" in the proceeding below; rather, the question is whether Plaintiffs put Commerce on notice of the issue. See Trust Chem, 791 F. Supp. 2d at 1268 n.27. Plaintiffs did so here and put Commerce on notice of the valuation of RECYCLEDAL based on its end-use. Thus, Plaintiffs exhausted their administrative remedies and are not precluded from bringing the issue of RECYCLEDAL's valuation before the Court. Therefore, the Court grants Plaintiffs' request for remand for Commerce to consider record evidence indicating Plaintiffs reintroduced a portion of RECYCLEDAL into the production of aluminum foil.

---

[7] In Part II of Dingsheng's First Surrogate Value Rebuttal, Dingsheng states the exhibits demonstrate:

> Dingsheng produces Al scrap as a by-product in course of production of Al foil which is thereafter directly reintroduced (without any pretreatment) into production of Al. foil. Dingsheng does not subject by-product Al scrap to any pretreatment before reintroduction as self-produced Al scrap. As such, Dingsheng's Self-produced Recycled Al is synonymous with By-product recycled Al.

Dingsheng First SV Rebuttal Part II.

## II. Commerce's Separate Rate Calculation & Request for Remand

Plaintiffs challenge Commerce's determination (1) that it did not commit a ministerial error by granting a separate rate to only those entities who participated in a prior review, and (2) to decline to correct the separate rate identification. See Pls. 56.2 Mot. at 32–38.[8] Defendant requests a remand for Commerce to reconsider whether four entities—Thai Ding Li New Materials Co., Ltd.; Dingsheng New Materials Co., Ltd.; Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; and Prosvic Sales, Inc.—are entitled to a separate ADD rate.[9] See Def. Resp. at 21–22. Plaintiffs support Defendant's remand request for Commerce to reconsider its

[8] Plaintiffs argue that Commerce's omission of the four Dingsheng entities from its separate rate calculations was a ministerial error because Commerce copied and pasted the companies eligible for a separate rate in the fourth administrative review into AR5 without any methodological basis. See Pls. 56.2 Mot. at 32–34. Plaintiffs also argue that Commerce unlawfully declined to correct its omission of the entities because Commerce has an affirmative obligation to correct ministerial errors and Dingsheng timely filed their request to correct the clerical error. See id. at 34–38. Because the Court, as Defendant requests, see Def. Resp. at 21–22, remands the separate rate issue for further consideration, it does not reach Plaintiffs' arguments on the issue.

[9] Commerce originally concluded in its Ministerial Error Memo that the alleged ministerial error was in fact a substantive determination and, therefore, denied Plaintiffs' request to correct the error and amend the Final Results. See Ministerial Error Allegation Memo. Defendant-Intervenors initially opposed Plaintiffs' ministerial error allegation because it argued the decision to grant a company a separate rate is "methodological and substantive" which requires analysis and Dingsheng failed to raise the issue in their Case Brief. Def. Int. Resp. at 21–22. At Oral Argument, Defendant-Intervenors acknowledged Defendant's request for a remand. See Oral Argument at 1:13:24–1:13:42. Because the Court, as Defendant requests, see Def. Resp. at 21–22, remands the separate rate issue for further consideration, it does not reach Defendant-Intervenors' arguments on the issue.

separate rate determination. See Pls. Reply at 17–18. For the following reasons, the Court grants Defendant's request for remand for Commerce to reconsider its separate rate determination for these entities.

The Court has discretion to grant a remand request when Commerce wishes to reconsider its previous position without confessing error. See SKF USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001). "Generally, a request for a voluntary remand due to substantial and legitimate agency concerns should be granted." Timken Co. v. United States, No. 13–00069, 2014 WL 1760033, at *3 (Ct. Int'l Trade May 2, 2014) (citing SKF USA Inc., 254 F.3d at 1029). An agency's concern is substantial and legitimate where it provides a compelling justification for remand, the need for finality does not outweigh the justification for remand, and the scope of the remand is appropriate. See Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 412 F. Supp. 2d 1330, 1335–39 (Ct. Int'l Trade 2005).

Here, Defendant's remand request is based on Commerce's substantial and legitimate concerns. A remand request for Commerce to correct a potentially erroneous calculation of a dumping margin is a compelling justification. See Baroque Timber Indus. (Zhongshan) Co. v. United States, 925 F. Supp. 2d 1332, 1339 (Ct. Int'l Trade 2013) (citing Parkdale Int'l v. United States, 475 F.3d 1375, 1380 (Fed. Cir. 2007)). The need for finality here does not outweigh the need to calculate accurate margins, especially in the context of an administrative review. See id. at 1338–39. Lastly, the scope of Defendant's remand request, i.e., for Commerce to reconsider its

separate rate calculations for the identified entities, see Def. Resp. at 21–22, is appropriate here. See Baroque Timber, 925 F. Supp. 2d at 1338–39. Accordingly, Defendant's remand request is based on Commerce's substantial and legitimate concern. Therefore, the Court grants Defendant's request for remand for Commerce to reconsider its separate rate calculations for the identified entities.

## CONCLUSION

Commerce's valuation of RECYCLEDAL using data from Heading 7602, HTS is not supported by substantial evidence because Commerce did not explain its decision to value RECYCLEDAL using data from Heading 7602, HTS in view of record evidence that detracts from its determination. On remand, Commerce must engage with the record evidence which demonstrates Plaintiffs reintroduced a portion of RECYCLEDAL into the production of aluminum foil in view of its practice regarding the valuation of scrap reintroduced into production. Defendant's request to remand the separate rate calculation is also based on substantial and legitimate concerns.

For the foregoing reasons, it is

**ORDERED** that Commerce's valuation of RECYCLEDAL is remanded for further explanation consistent with this opinion; and it is further

**ORDERED** that Commerce's separate rate calculation is remanded for further consideration of the remaining entities consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix, including the entire confidential record, within 14 days after the filing of replies to the comments on the remand redetermination; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: November 10, 2026
New York, New York